May it please the Court, Your Honor, my name is Charles Smith and I represent the appellant, Meredith Oliver, who is present here today. I'd like to reserve whatever time remains for rebuttal. In opposing this motion for summary judgment, we addressed every element of the claims in the complaint and we responded to the District Court's 11-page order. Counsel, I have a couple questions for you. Sure. It looked to me like the employer would have to know she was disabled for at least one of your claims. And it looks like what she said, basically, was she had a sore throat. Now, everybody gets them from time to time. That lawyer that just left the podium probably is going to have one within a day or two if he doesn't already. Why would the employer know she was disabled? Well, there are a few reasons why. First of all, if you look at her declaration, and I think at the record that's Volume 5 at 43-2, page 8 and 9, paragraphs 39, 40, 44, she goes into a lot more detail than just a sore throat. In fact, what she had was she had a severe medical condition. Hold on. I'm looking at her here.  Sore throat, laryngitis. Chest pains, insomnia. And she mentioned that she'd already paid $1,000 in medical bills for treatments, that the issues were stress-induced. I asked her to read books. The one for lawyers, I don't know how mail-offs would stay in business. I mean, a lot of this stuff is just things that don't disable you. They just make you feel less well. I think what she said was that I think in her deposition she also said that she had never experienced pain in a situation like this. Her health was deteriorating. She was scared. Her doctors at one point said that her situation might be caused. It doesn't matter what she knew from her doctors. A lot of people know that they've got bad medical conditions, but if the employer doesn't know it, then the employer can't be discriminating against them on account of it. And what I'm looking for is evidence from which the employer should have known. I think the most telling evidence there is Mr. Coram's reaction to the conversation because what he said was, first of all, he said he recognized that she was going to take a medical leave. She was going to need a medical leave. He called her boss, Ms. Sobel, immediately after that conversation. I remember reading that conversation. She basically said, my employees are always taking medical leave when they're stressed out, but I'm not going to do that. And he suspected she was lying, so he thought she might be taking medical leave, even though she said the exact opposite. That's the way I remember it. And that is what the district court said, but it's directly contrary to the evidence that Ms. Oliver provided in her declaration. Specifically at paragraph 44, she says under oath that she told him during that conversation that she was likely to submit a formal request for a disability. Now, unfortunately, it's one of our challenges. The district court, we believe, weighed the evidence. It disregarded Ms. Oliver's declaration. It doesn't say she's going to. She says if nothing changed, that was likely to. And it looks like what she was complaining about was basically ever since she fired the boss's daughter, her immediate boss, and she had not been getting along, and she wanted a different boss. Well, I think that's not correct, because I think what she was saying was that she was concerned about her health condition. If she didn't have a response from the employer, and I think taking a step back, I think the situation that's most telling is also Mr. Coran's response, that he called AstraZeneca's office to say that if Ms. Oliver calls for a disability request, tell her it's denied. He said that because he believed she was going to make a medical leave request. He thought she was going to. Why did he think so? Because of what he was told on March 3. Now, we believe he may not have been as forthcoming as he should have been in what was actually said during that conversation, but we know from Ms. Oliver that her testimony was that she said she had a medical condition. She needed help. She asked to be transferred. That was denied. Mr. Coran interpreted that to mean that she was going to request a medical leave, and he acted on that. He actually went forward and called AstraZeneca and said this woman is going to ask for medical leave. At that point, when the employer believes that she is going to make a request for medical leave, our position is then the employer is on notice that there is this issue. And did she ever give the employer anything from a doctor before she was fired saying she was disabled? That's not in the record. I don't have anything from a doctor that she did that. What we do have is her communication. And I think because the fact that I ---- Her communication, it sounds like she's got a sore throat and laryngitis and she's stressed out. Well, I think what she said is that she had ---- I think we're talking about in the ---- the first thing is in the March 3 communication. What we know is she did talk about the fact that she had a medical condition. She paid a lot of money. She was stressed. She didn't know what was happening. And through that conversation, Mr. Coran interpreted it to mean that she was going to have to ---- she was going to take a medical leave. That was the end result of that conversation. And I think when an employer now knows that this person is going to ask for help under the statutes, at that point the employer cannot go ahead and fire this employee because they believe they're about to exercise their rights under the ADA and the FMLA. And that's, I think, one of the main positions that we have in this case. Why we want to make sure ---- I'm sorry. You think that just having him infer that she's going to ask for medical leave is enough without any proof at all that she's got a disability? Absolutely. Yes, I do. People ask for medical leave falsely all the time. Well, I think ---- And he might well have thought ---- Well, I think ---- I'm not speaking, you know, particularly about your client. But, you know, a supervisor might suspect that some employee is going to ask for medical leave even though it's not justified. We've had cases here this week where there was that kind of suspicion and they sort of found an employee and see whether they're doing, you know, they're outside gallivanting or shopping or whatever when they're supposed to be in bed sick. There's also lots of perfectly legitimate medical leave that isn't disability. Like there are six people in my chambers, and every one of us occasionally gets sick. And then ---- Even though we're back. Your Honor, first of all ---- And sometimes we can even predict it. Like if somebody's all gray and sweaty and looks awful, I kind of figure they'll be out the next day if I don't say go home right now. If ---- Apologies, Your Honor. I'd like to address Judge Kaczynski's ---- Do them both. Do Judge Kaczynski's first. Yeah, you can do both. As to Judge Kaczynski's position, you don't have to be disabled ---- I don't have a position. It's a question. It's not a concern or position. It's a question. The answer to your question, Your Honor, is that under Barker v. Riverside County at pages 825 to 826, the Ignite Circuit said you don't have to be disabled to qualify for protection under the ADA. When you make a request, you are protected. And, excuse me, for answering your question, Your Honor, I understand that, yes, people do get sick. And one of the things that the reason why we think this issue is so important is because when somebody tells their employer or communicates to their employer that they are sick enough that they are going to ask for medical leave, the employer should not then go ahead and terminate that person because they think they're about to ask for the ---- for this right. But I don't see why the employer would think they're about to ask for disability. I mean, an employee says, I feel horrible. My throat is sore. It's hard to even talk. I feel like I'm choking. I'm losing weight. I can't sleep. I've got acid reflux. I have aches and pains. I'm anxious. I'm depressed. I think most people would just think you have the flu. If you do nothing for it, it will be gone in a week. And if you take good care of yourself, it will be gone in seven days. Your Honor, what were the rule, though, if any time you appeared sick, an employer could fire you because they think you're getting sick, because you might then request disability? If the rule were that there were no preemptive retaliation under the ADA or the FMLA ---- You've assumed the answer to the question, that they think you might get disability. I would think that would be the furthest thing from an employer's mind if somebody presents like that. But if the employer knew that there was no ability to do a preemptive retaliation based on the fact that the person was about to request leave, you would let the employer work it out, persevere, see if they get sick, let them try to make their own decisions. Where if you create a rule, as the district court asked this court or district court ruled, was that any time someone appears to be in the position where they might be seeking leave and we think they're about to and we go ahead and fire them, that's going to create a situation where employees are not going to want to keep working. They're going to want to make the request for leave immediately. And I think in Ms. Oliver's case, her boss or her doctor told her. If you don't give me a new boss, I'm going to be all stressed out and I'm going to take leave. That's the situation you're talking about? No, Your Honor. My boss makes me sick, basically. That happens, actually. What I think there's two issues there. One is she was saying that her boss was making her sick, was making her disabled, and under that situation she has invoked the protections under the ADA. And what I was going to mention was Ms. Oliver actually went to a doctor on March 6th. The doctor told her, you're sick enough to take disability. You're sick enough to go out and leave right now. And if she'd done that, we wouldn't be here. But instead, she tried to be a good employee. She hung it out. She persevered at a time when her other employees, and we dispute the fact that AstraZeneca had no idea until later on that she was really that sick because people that worked around her testified that they knew she was very sick. So that's why we think the idea that preemptive retaliation should not be the rule in the circuit. This should not allow employers to fire someone because they believe they're about to turn about to request leave under the ADA. Thank you. Time's up. Thank you, Your Honor. Hello. Please, the Court. I'm Connie Michaels. I'm from the Mendelson Law Firm, and I'm here on behalf of AstraZeneca. Ms. Michaels, let me ask you the question that concerns me. I'd like to talk not about the retaliation claim but about the contract claim. Okay. All right? If I understand the facts right, set me straight if I've got these dates wrong. On March 12, 2009, a decision was made to fire Ms. Oliver, but she wasn't yet fired, right? Correct. So on the 12th of March, she's still an employee in good standing? Yes. That's the date that the legal department approved the prior decision made by her superiors. March 18, she is presented with a letter firing her, the firing to become effective on April 1, 2009. Correct? I believe that's correct, Your Honor. So until April 1, 2009, she's still an employee in good standing? No, Your Honor. She is not considered to be an employee in good standing at that point. She's not on the payroll? Isn't her termination effective April 1? Her termination is effective that date, but she's no longer considered to be an employee in good standing. Okay. Let's not debate whether it's in good standing. She's still employed, right? She hasn't been terminated yet. She's terminated April 1. Her effective date was April 1. Now, my question is – Talk louder. I keep having trouble hearing these answers, and they're critical. I'm so sorry, Your Honor. I apologize. Just answer Judge Silverman's questions loud. My question is, why doesn't she – why is she no longer entitled to disability for a disability that arises during the period of her employment before she's terminated? Because the decision had been made already to terminate her. They may have decided two years before they're going to fire her. But if she's still working there, she hasn't been fired yet, why isn't she entitled to all the benefits of her employment, including her salary, her vacation, her disability, whatever else she gets, her parking place, whatever you get under her employment if she's still not terminated? Well, she was still – the effective date of the termination was coming up, but for all practical effects, she was, in fact, terminated. And the reason the termination occurred was because they had a legitimate business reason to fire her. They may have had a good reason, but they fired her after her disability supposedly arose. If they had been smart, they would have fired her on the 13th, you know, or the 12th, but they didn't. Well, they did not know of her disability until after they had made the decision to fire her. That's why I'm not talking about the retaliation claim. I'm talking about the contract claim. She's still there. But keep in mind, Your Honor, the contract claim is not a part of the case at this time. It was settled out by the parties. Part of the contract claim. Part of the contract claim was the – Not this part of – not this part of the contract claim. But counsel waived it by not specifically addressing it in his brief in a specific and distinct way of making it part of his issues. I thought it was raised. That's why I was asking about it. Let me ask you, suppose the decision is made to fire her on the 12th. It's to become effective on April 1st. Okay, that's what happened here. In the meantime, let's suppose she gets hit by a truck. Does she get disability? I don't know, Your Honor, how that would play out. Well, why would this be any different? I mean, now we're just arguing about what is and what is not a disability. Well, from the standpoint of the company's paperwork, they had decided she was no longer an employee, but she was going to continue to get paid up through that date. So from their perspective, they fired her and that she's no longer – I don't see why she doesn't get everything she's entitled to up until that date, including if she's entitled to disability, disability. Now, I take your point. Maybe a sore throat isn't a disability. Maybe there are other reasons to kick her out. But to say that you made a decision to fire her, she hadn't yet been fired, I don't see how that helps you really on the contract claim. Well, but she had been fired, Your Honor. And the contract claim has to do with progressive discipline, if we're talking about the same contract claim. No, I'm saying she has a contractual right to all of the benefits of her employment until they terminate, and they didn't terminate until April 1st, and her disability allegedly arose in March. But her disability is something that she don't be entitled to if she was an employee in good standing, and at that point she had already been told – this is assuming she'd even be entitled to disability, and I appreciate you don't want to go with that issue at this time. But she'd already been told that she was no longer an employee and that she would only be getting paid up to that particular date. Would she have gotten the same money, whether it was for disability or for working, between March 13th and April 1st? I don't know the answer to that, Your Honor. I'm sorry. I do know, to further the point, that we, of course, did not perceive her to be disabled. And I think that that point was – She very well may not be disabled. But it seems to me no answer to say that she was – you know, she was not an employee when she clearly was an employee on the date she claimed her disability arose. But the reality was, as was pointed out earlier by the bench, just because you may now be claiming that you were disabled on a particular date or submitted a request for it does not mean that you're entitled to disability. So the issue of whether she's entitled to disability under a contract goes further. It's not just whether she submitted the request. It was, one, whether she actually had a major life activity that was impacting that disability. Right. That's a good reason not to pay it. I agree with you. And so the two are combined. We can't dismiss the two. What's the answer to my hypothetical about somebody who is indisputably disabled before they're terminated? The lady who was hit by the truck on the 15th of March but is on the payroll until April 1st? Your Honor, I would have to look at the specific disability policy. But I would think that in the general case that you're describing, they may be entitled to some type of benefits. It would depend, though, if they were considered employee good standing and the nature of their particular claim. How much? Let's say somebody is on the payroll, they're employed, and they've been told you're terminated effective April 1. They indisputably become disabled in March. What do they get on disability in that circumstance? In that circumstance, Your Honor, I don't believe they would get disability, assuming that they were, of course, disabled, which is not our position here. Well, they've got at least a couple of weeks when they're not coming to work because they're disabled from the truck hitting them. Do they get paid beyond that? I wouldn't think so, Your Honor. You know the plan? I mean, you're the lawyer. I assume you know it a lot better than I do. Well, I wouldn't assume that, Your Honor. But in this particular area, you do a lot in terms of disability. And the reality is that if you have a legitimate business reason to terminate someone, you can still terminate them. You just can't terminate them because they're disabled. I'm assuming all that. I'm just wondering, somebody knows for a fact, it's all established and it's perfectly legitimate that they're terminated April 1, and it's perfectly legitimate and undisputed that they become disabled March 15. Do they only get disability pay instead of pay for working between March 15 and April 1? Or do they get a year or two of disability or more after April 1, their termination date? I wouldn't expect any employer would provide a year or two disability. Typically, it would depend on their plan. Do you know the plan in this case? Not with respect to what you're saying, whether she would be getting just disability pay as opposed to her salary. But I don't recall that. Well, she wouldn't get any salary after April 1 because she's been fired. Right. But my understanding was that they would continue to provide her with her payroll up until that date, whether you're saying typically, and I don't believe that was the case here, that she would get additional monies. It would be one or the other whether she would get paid at all. It would depend on the plan, wouldn't it, on the policy? I mean, like if there's life insurance that goes with the job and somebody gets fired effective April 1 and they get killed, you know, run over by a truck or something, presumably the policy was in effect and they would pay out a life benefit if that's what it provides. And as far as disability, I suppose you could have a disability policy that pays years and years of disability if you're covered on the date of the, but that would be a question for the policy providers. Is the policy in the record? It is not, Your Honor. I don't recall it specifically. Well, it doesn't matter if you recall it or not. If it's not on the record, it's not before us, is it? I would also say, though, sometimes these disability policies provide for no payment at all. That's why it makes it hard to answer it generally without seeing it. Well, some may provide that you get your salary, but you'd get the salary until April 1 anyway, right? Exactly, Your Honor. If I've answered, tried to answer your point, I just wanted to make one very specific point, which is that counsel's taken some liberties with the record. We've pointed out quite a few in the brief, but the one he said here today, I really was sort of surprised about and wanted to correct. He said to you that Mr. Coran called the benefits people, suggesting that it was right after his conversation with Ms. Oliver to keep her from getting her benefits, but that's not what the record says. He talks to Ms. Oliver on the 3rd. It is only after the decision to terminate is made and approved by legal and efforts are made to try to reach out to Ms. Oliver that Mr. Coran called benefits person March 13th at 8, 10 p.m. is when he made the call. So I did want to correct that for the record. Okay. Thank you. Thank you, Your Honor. Please. Okay. You're out of time. We'll give you a minute for a bottle if you wish to take it. Pardon me, Your Honor? You're out of time. You can have a minute for a bottle if you wish to take it. Okay. Thank you, Your Honor. Yes. As to the last point that opposing counsel just mentioned, we did say, and it's correct in the record, it's not a misstatement, that Mr. Coran, after he had his conversation on March 3rd, did call the benefits people to tell them not to process any disability request that Ms. Oliver might make. Do you happen to know what she'd get if she qualified for disability between the date she was fired and the date of her effective termination? Well, I do know what it is. It's six months of paid leave under the policy. But I think whatever the contract provides is what it provides. The fact is she was an employee through April 1. On March 13, she provided her formal request for disability leave under the policy. She provided the medical reports as you're supposed to. Those reports were rejected because they claimed they had a right to terminate her. You brought a breach of contract claim involving bonuses or something of that sort and claiming the disability benefits. Right. I understand that you settled the bonus part of it. Only the bonus part. Correct. Yeah, that was the only part. That was the only part that Judge Klausner left in the case. It was worth about $4,000, and we didn't exceed it. This other part hasn't been settled? No. The other part has not been settled. Okay. Thank you. And what is the other part? Pardon me? What is the other part? The remaining part of the contract claim? Yes. What it is is our claim for the paid benefits of six months of paid leave that are provided under the policy when one asks for disability leave under the AstraZeneca contract. When she joined the company, she signed a contract that AstraZeneca would uphold. She sought to claim those rights under the contract. AstraZeneca is now denying and refusing to pay those. That was our claim. And that deal is even if termination has occurred before the end of the six months? Your question is it applies as long as she's an employee? Yes. And we think it applies. We don't think that AstraZeneca can deny her that right because they think she's about to request it. I'm trying to find out whether we're talking about three weeks of disability pay, which sounds like it would probably be the same or less than the three weeks' pay she got anyway from the date she was fired to April 1, or whether we're talking about an additional six months. I think we'd be talking about an additional six months, Your Honor. So let me give you a different hypo. The employee is getting married and moving to Alaska and gives fair notice so that the employer can replace her. Everything's very nice. And the employer is going to ‑‑ it's March when she gives the notice. The employer is going to replace her April 1. No problems at all. And, unfortunately, something happens to her spine that renders her a quadriplegic and totally and permanently disabled between when she gave notice and her April 1 departure date. Does she still get an additional six months' pay under her deal, or does she just get paid until April 1, which is the date that she was going to terminate anyway? I don't know, Your Honor. That's an interesting hypothetical, and I think if there was ‑‑ she might have to retract her resignation, or if the resignation held up, maybe that would be the rule, that she wouldn't get anything. But in our case, we're doing ‑‑ I don't know. I don't know the plan. Yeah. So I figured you did, and I'm asking. I'm sorry. And it's your claim, so I figured you don't. I have looked at it a while ago. I'm sorry I don't know the answer to that question. It's a good question as to whether it ‑‑ actually, I don't recall having, when I read it, having actually answered that question, so it may be unclear, ambiguous under the contract itself. But I think what is clear is you can't fire somebody. See, I figure there's nothing to preserve until April 1, because she gets paid until April 1 whether she's disabled or not. All that really matters is after April 1, I think, though I don't know for sure. Right. I think so, Your Honor. The other thing was, you know, obviously, or I shouldn't say obviously, our position is that she was still a full‑time employee on March 13 when she made her formal request. She asked for medical leave. She turned in the medical records, and those were rejected by the employer because they believed they had a right to terminate her because she had not yet requested that leave before they made their termination decision, which we think was wrong. And finally, Your Honors, we did mention another issue that I thought was very important. If she'd asked for sick leave, say she's fired March ‑‑ the dates are starting to slip around in my mind. Say she's fired March 12, effective April 1, and March 15, she says, I'm sick. I need to take sick leave until I'm better. She brings in a doctor's note that proves she's sick, and they say no sick leave for you. I can't see where it would give rise to any claim because she's getting paid, whether they call it sick leave or whether they call it we're paying you until April 1, we don't care whether you're sick or well or working or not. I think under that situation where you're making a claim for disability, for full‑time pay between the time when you're ‑‑ I said sick. You said disability. I'm sorry, sick leave. If you're getting paid for sick leave or working, I mean, I don't know. It may depend on the individual employer because sometimes employers ‑‑ I'm just talking about this one. In this one, I don't know the answer to that. My understanding is she has sick leave that's like vacation pay, actually, I should say. And so it's like extra days. So had she been ‑‑ had her last day been April 1, she would have been entitled to a number of extra days that she would have been paid after April 1 for unused sick days. Where do you get that? Where do I get that? I don't think that's in the record. I'm not sure that's in the record. If it's in the record, then if it's not in the record, it doesn't exist, right? Probably not, Your Honor. I was trying to answer the question, and I think I may have relied on my knowledge. You ask questions within the confines of the record. If it's not in the record, then it seems to me that her sick leave or disability leave, whatever it is, ends the day that her employment ends. Right. I think that's right. Okay. Thank you. Thank you, Your Honor. Cases argued will stand submitted.
judges: Kozinski, Kleinfeld, Silverman